INGALLS SHIPBUILDING CORPORATION, et al. *v.* HOWELL.

No. 39288          October 18, 1954          74 So. 2d 863

*White & White,* Gulfport, for appellants.

*W. S. Murphy, Darwin M. Maples,* Lucedale, for appellee.

GILLESPIE, J.

The appellee, R. C. Howell, was employed by appellant, Ingalls Shipbuilding Corporation, whose workmen's compensation insurer was American Mutual Liability Insurance Company. Appellee suffered a heart attack, became disabled, and made claim under the workmen's compensation act. The attorney-referee heard the evidence and denied the claim. The commission, by a divided vote, reversed the attorney-referee and awarded compensation to claimant. On appeal to circuit court, the commission's award of compensation was affirmed. The employer and its carrier appeal to this Court.

Howell had worked for Ingalls for some years, except for intervals when he was laid off because of lack of work. He was 55 years old. Prior to employment by Ingalls, he had been physically examined, and prior to the date of the heart attack in question, Howell had not had any heart trouble to his knowledge. He was an experienced heater and shrinker, and was performing this work when he suffered the heart attack here in question. The ship under construction by Ingalls had buckles or waves in the bulkhead and the function of a heater and shrinker was to apply heat and water to shrink and straighten the bulkhead. Howell was using an oxyacetylene torch to apply the heat. This torch was about 24

inches long, to which was attached four rubber hoses, one each for water, oxygen, acetylene and air. Howell was engaged in shrinking the bulkhead in the hold of the ship between the second and third deck, counting down from the upper deck. An open cargo hatch, 24 feet by 30 feet, extended from the upper deck downward; this hatch and other openings allowed air to circulate. The distance between the floor of the third deck to the deck above was about 16 feet.

On February 5, 1952, Howell had heated the bulkhead to a height of about 8 feet while standing on the third deck floor. He then got on a scaffold which was erected about ten feet high and about twelve inches from the bulkhead. The hose attached to the torch hung over this scaffold. Howell was engaged in heating below him by sitting facing the bulkhead, with his feet hanging between the scaffold and the bulkhead. He was stooped forward, bending down and holding the torch between his knees. While thus engaged, Howell felt a sharp pain in his chest and a smothering sensation. He got off the scaffold and was taken to the hospital where diagnosis showed he suffered a coronary thrombosis and posterior myocardial infarction—in lay language, a heart attack. The diagnosis was based on three electrocardiograms and no dispute exists as to its correctness. Howell was able to do light work at the time of trial before the attorney-referee, but was unable to return to his shipyard job.

Howell described as "unusual" and "strained" the position he was in at the time he suffered the attack. The torch and such of the hose he was supporting at the time of the attack weighed some five or ten pounds.

An attempt was made to show that there was insufficient oxygen in the air at the time, and that noxious fumes, carbon monoxide and carbon dioxide, were present. We will not detail the facts except to state that the proof failed to show a harmful lack of oxygen or the presence of noxious fumes in harmful quantities. More-

over, from the medical proof, it appears that Howell did not experience symptoms indicating insufficient oxygen or the presence of carbon monoxide or carbon dioxide. Nor was proof made that such heat as the torch generated had any causal connection with the heart attack.

Three physicians testified, one the Ingalls' physician who first treated Howell, and who was Howell's witness, and two medical experts offered by the appellants. The Ingalls physician, not a heart specialist, did not know what brought on the heart attack. The two heart specialists were of the opinion the work Howell was doing had nothing to do with the heart attack; that the attack was the result of a disease and was not precipitated by the work Howell was performing. The most favorable statement to Howell that could be elicited from one of the doctors was that it was possible for strain to cause such heart attack. Howell's family physician was not a witness.

This case hinges on the question of causal connection; if Howell's work caused the heart attack or in any manner aggravated, accelerated or contributed to the attack, then Howell's heart attack is compensable. Pearson v. Dixie Electric Power Association, 215 Miss. 454, 61 So. 2d 298. But claimant must prove facts prerequisite to recovery; and causal connection is one of such facts. In this case there is no proof that Howell's duties caused, aggravated, accelerated, or contributed to the heart attack unless it can be said that the commission could find from common, or judicial, knowledge that such duties as a reasonable probability, caused, aggravated, accelerated or contributed to the attack.

Appellee relies on the Pearson case, supra; however, in that case the uncontradicted medical evidence was to the effect that the work Pearson was performing shortly before he died was a factor contributing to his death. In the instant case, the opposite is true; all the positive

medical proof is to the effect that Howell's work did not cause or contribute to Howell's heart attack.

Numerous cases have been cited by appellee, but we know of no case where this Court has held that a heart attack is compensable in the absence of proof of causal connection between the heart attack and the employee's work.

In 1 Larson's Workmen's Compensation Law, Section 38.83, the rule as to causal connection is, in part, as follows: "There must still be an unexpected result, and there must still be an exertion—some exertion—capable medically of causing collapse. This can by no means be taken for granted. If heart failure overtakes the employee while he is merely waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did not happen by chance; it happened by the inexorable march of the disease. It would have been accidental if the employee, by a miscalculation of his own strength, inadvertently hastened his own death by exertion that caused the final breakdown.

"As the unusual-exertion requirement becomes more and more weakened by exceptions and interpretations, the burden of keeping this class of cases within proper bounds falls squarely on the shoulders of the expert medical witness and the expert trier of fact. Plainly, the heart cases will continue to be troublesome as long as some reach the appellate courts on a record in which the medical testimony is emphatically certain that effort and exertion have nothing whatever to do with coronary

thrombosis, while most such cases are based on the opposite theory.''

We hold that there was no proof before the commission that Howell's heart attack was probably caused by his work, or that his work probably aggravated, accelerated or contributed thereto. The finding of the commission was not based on substantial evidence. The claimant failed to meet the burden of proof as to causal connection.

We recognize the rule that the workmen's compensation law should be broadly and liberally construed, that doubtful cases should be resolved in favor of compensation, and that the humane purposes the act seeks to serve leave no room for narrow and technical construction. But the rule of liberal construction may not be extended so as to eliminate the necessity of making proof prerequisite to recovery; and the humane spirit of the law does not warrant its extention beyond its legitimate scope.

Our decision in this case is not inconsistent with what we held in such cases as: Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356; Ingalls Shipbuilding Corp. v. Byrd, 215 Miss. 234, 60 So. 2d 645; Pearson v. Dixie Electric Power Assn., supra; LaDew, et al. v. La-Borde, 216 Miss. 598, 63 So. 2d 56. In all those cases there was proof of causal connection.

We do not intend to lay down any general rule that the commission must be bound by the testimony of any one or more medical experts. Cases may arise where the commission could, without medical testimony, find from common experience and common knowledge that there is causal connection between a heart attack and the condition under which claimant performed his work; but this is not such a case.

The award is reversed and judgment entered here for appellant.

Reversed and judgment entered here for appellant.

*McGehee, C. J.,* and *Hall, Kyle* and *Arrington, JJ.,* concur.