In the Matter of the Claim of Gertrude Goldman, Respondent, against White & Case et al., Appellants. Workmen's Compensation Board, Respondent.

Third Department, November 13, 1959.

*Galli & Locker* (*Urban S. Mulvehill* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Edward A. Bailey* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

*Harry Fractenberg* for claimant-respondent.

HERLIHY, J. Decedent, about 68 years of age, had been employed as a messenger by his employer for approximately 11 months prior to the date in question. He had suffered from a pre-existing heart condition, the nature and seriousness of which, by doctor's prescription required the use of nitroglycerine.

On November 29, 1955, he arrived at work about the normal time and during the forenoon pursued his usual activities of making deliveries for his employer to various parts of the city. Sometime after one o'clock in the afternoon he left to make a delivery to Bankers Trust Company at Rockefeller Plaza, New York City. He had no orders as to how to go but it is assumed throughout the record that he took a subway, presumably Lexington Avenue, and all of the testimony as to the number of subway steps, the route taken and similar details are premised on this presumption. He was carrying a brief case with some documents of the ordinary weight of four to six pounds. He made the delivery to the proper personnel at the bank, received a one-page receipt and started from the bank when he slumped over dead. He was at the exit of the bank but still within the building and there are additional assumptions, as to this phase of the case, that he was in the act of pushing a door which was made more difficult because of the wind blowing outside.

The board found "he (decedent) was subjected to unusual strain and exertion due to strong winds and cold to which he was exposed while making a delivery to Rockefeller Plaza * * * he was caused to suffer an acute coronary insufficiency".

An examination of the record convinces us, as a matter of law, of failure of proof to find an accident as defined in *Matter of Masse* v. *Robinson Co.* (301 N. Y. 34, 36).

Dr. Fishberg, who attended decedent for his heart ailment for some years prior to death, stated it was "probable" or "speculative" that overexertion could be a cause of death but coupled with that statement were such observations as "To me it sounds like a ridiculous morning for a man of 67 who uses nitroglycerine. When you use nitroglycerine you have a real coronary disease" and again with reference to the heart con-

dition and his activities "If I had known about it, I wouldn't let him do it."

A doctor testified for the carrier and concluded that decedent died not by reason of any errands or effort but because of natural progression of an antecedent disease. He concluded his testimony "I think the only reasonable thing we can say is that this man suddenly dropped dead. All else would be in the realm of speculation." There was no autopsy.

From this medical testimony the Referee found no accident and was affirmed by the board. Thereafter on behalf of claimant, a report was filed by Dr. Mendel Jacobi, the file reviewed and a finding made by the board in favor of the claimant. The doctor did not testify as to his report and a review of it demonstrates his conclusions of relationship were arrived at on the basis of imaginary and unrealistic statements, some of which are not part of the record, and lacking probative force, his conclusions being contingent, speculative or merely possible and therefore not substantial evidence. (*Matter of Riehl* v. *Town of Amherst*, 308 N. Y. 212, 216.)

The cause of death here was not coronary occlusion or thrombosis but coronary insufficiency which does not imply any new cardiac pathology (heart injury) and there is no evidence of any. Such condition is due to the gradual progression of coronary arteriosclerosis.

The record as a whole is convincing that there was no accident but rather deceased's death was caused from the wear and tear of life as enunciated in *Matter of Burris* v. *Lewis* (2 N Y 2d 323). We do not believe *Matter of Schechter* v. *State Ins. Fund* (7 A D 2d 813, revd. 6 N Y 2d 506) was intended to change that rule. In that case the myocardial infarction suffered by Schechter was directly related to the intense emotional and physical strain extending over a period of weeks.

There is no testimony that the work he did November 29 was different from any other day and under the circumstances herein, the weather conditions—strong wind and cold—should be considered an incident to employment rather than factors in compounding unusual effort or strain as found by the board.

Decision and award of the Workmen's Compensation Board should be reversed and the claim dismissed.

BERGAN, J. (dissenting). It is of particular importance in this case to see exactly what the record will sustain in the way of factual findings before it can be decided whether the Workmen's Compensation Board was right or wrong as a matter of law in holding the employee's death was due to an industrial accident.

Some of the proof is in the record by direct testimony or exhibits; and some of it rests upon circumstantial evidence. If the board's findings are underpinned by evidence of substance, we are required to take the facts the way the board has taken them; we are not at liberty to draw our own contrary inferences.

The board could find that the decedent, a 68-year-old messenger suffering from arteriosclerotic heart disease, was sent from the employer's office at 14 Wall Street at 1:35 P.M. to deliver legal documents at a bank at Rockefeller Plaza at 51st Street and that he had arrived there and had delivered his documents by 2:00 P.M.

It could find that he travelled by subway, both because his superior testified he was expected to use the subway and carfare was allowed him for this purpose, and because the distance and time of arrival were such as to make it impossible to have used any alternative form of public transportation. The record contains the statement, undisputed although appellants had the opportunity to dispute it, that this was "a relatively short interval for the trip".

That decedent used the subway on his journey, therefore, is a fact strongly supported circumstantially by all the evidence in the case. The nearest subway station to the point of destination was the 51st Street Station of the Lexington Avenue Line; and the conclusion that decedent used this station rather than one farther away would not only be warranted by all reasonable inferences, but in the light of the importance of physical activity of decedent from the time he left the subway train to the time of his collapse and death, the shortest distance from station to destination would be the inference most favorable to appellants.

To get from the train to the street at this station it was necessary for decedent to climb 32 steps; and when he reached the street the board could fairly find within this record that decedent met with an unusually cold temperature and that he walked westerly from Lexington Avenue three and one-half to four blocks against a powerful westerly wind.

The Weather Bureau's temperature reading for 2:00 P.M. was 25 degrees above zero and further showed that the average temperature for that day was 18 degrees below normal average for November 29.

Moreover, a maximum wind velocity of 43 miles an hour was recorded at the Weather Bureau station at the Battery; of 26 miles an hour at Central Park; and of 36 miles an hour at La Guardia Field.

The wind direction was westerly and this velocity was shown to be building up in intensity and to have reached maximum

strength at or near the time decedent was walking westerly on the street from the subway station to his destination.

Appellants pursued the argument before the Referee that since Rockefeller Plaza is "surrounded with tremendously high buildings" which could "ward off wind" the Weather Bureau's velocity recordings do not have much significance in this case; but it is not altogether so clear from common experience that the base of high buildings affords much shelter from high wind velocity; or, indeed, that wind effects are not often accelerated near such structures.

In any event these official readings at far separated observation points in New York make it clear that wind of high velocity was general in the area; indeed, the record shows for that date one of the highest velocities recorded in the month, and the actual highest velocity to accompany so low a temperature.

If the appellants desired to show that the wind was not so strong near Rockefeller Plaza, they should have established the fact either directly or by expert testimony; and in the absence of such proof the board would be justified in taking the main office readings of the Weather Bureau at the Battery as prima facie proof of wind velocity in the general area.

Thus the record would sustain the conclusion that decedent left the subway, climbed a long flight of stairs, and walked in unusually cold weather against a powerful wind to his destination. The short time sequence between his leaving Wall Street and his death at Rockefeller Plaza would warrant the further inference that there had been uninterrupted and, for him, strenuous physical effort from the time he left the subway to the time he collapsed and died. This is something more than just the ordinary wear and tear of life.

This circumstantial proof is so cemented into undisputed facts — the time of departure from Wall Street, the time of arrival at destination, the availability and place of location of transit facilities, the conditions of temperature and wind — that the facts are as reliably established from the viewpoint of legal evidence as though a witness had actually seen the decedent make the journey step by step; and, indeed, a witness could add little to what has been made manifest by these facts and what has been found by the board.

When the medical dispute in this case is examined closely it will be seen that the issue between the doctors is very narrow. There is clear and unequivocal association between the strain of the activity and the death by two of claimant's medical witnesses.

Appellant's medical witness does not suggest that climbing subway stairs and walking in cold weather against a wind would

not be competent to cause a heart attack in this decedent's case; indeed, he testified that walking in cold weather was a common cause of death in coronary cases: "We have a great deal of experience along these lines".

But his view was that if the cold and wind had any such adverse effect, it would have been manifested earlier on the street and not after decedent had gotten out of the wind into a warm building. He expressed the view that such experiences as subway stairs and cold and wind have no "cumulative effect"; when they are over the adverse physical consequence ends rapidly, as is the experience when a cardiac patient is clinically given physical activity tests and then put to rest.

But claimant's physician's view was that in this instance there was a cumulative effect of climbing subway stairs and walking in the cold and wind, because the short time sequence strongly indicates that decedent had not rested, but that his activity continued unbroken through the walk to his final collapse, even though he was at the time of actual collapse out of the cold and wind. We think the medical issue, thus framed by the experts is, therefore, very narrow and lies in the area of fact and within the sole province of the board to decide.

That the board could find this to be a case of physical exertion in the work leading to the heart attack and to the employee's death, and, indeed, a case of unusual exertion and exposure in the course of duty, seems justified by abundant authority. (*Matter of Schechter* v. *State Ins. Fund*, 6 N Y 2d 506; *Matter of Kehoe* v. *London Guar. & Acc. Ins. Co.*, 303 N. Y. 973; *Matter of Cramer* v. *Sunshine Biscuits*, 2 A D 2d 719; *Matter of Bithorn* v. *Henry Isaacs, Inc.*, 282 App. Div. 910.)

The award should be affirmed.

FOSTER, P. J., and REYNOLDS, J., concur with HERLIHY, J.; BERGAN, J., dissents in an opinion, in which COON, J., concurs.

Decision and award of the Workmen's Compensation Board reversed, without costs, and claim dismissed.