66 N.J. Super. 116 (1961)
168 A.2d 666
HANNA TRITSCHLER, PETITIONER-APPELLANT,
v.
MERCK & COMPANY, INC., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1961.
Decided March 14, 1961.
*117 Before Judges PRICE, GAULKIN and SULLIVAN.
*118 Mr. Aaron Gordon argued the cause for petitioner-appellant.
Mr. Sidney M. Schreiber argued the cause for respondent-respondent (Messrs. Schreiber, Lancaster & Demos, attorneys; Mr. Sidney M. Schreiber, of counsel).
The opinion of the court was delivered by PRICE, S.J.A.D.
Petitioner, widow of Frank Tritschler, an employee of respondent, seeks the reversal of a judgment of the County Court dismissing her workmen's compensation dependency claim petition. The judgment affirmed similar action by the Division of Workmen's Compensation.
The instant appeal projects the issue whether Tritschler's fatal heart attack on June 15, 1955, allegedly precipitated by the exertion incident to his physical act of walking to respondent's plant infirmary for treatment a few minutes after he suffered an attack concededly unconnected with his work, justified an award of compensation under R.S. 34:15-7 et seq. Respondent contends that Tritschler's death did not result from an "accident arising out of and in the course of" his employment.
The facts are not in substantial dispute. Tritschler, 56 years of age, had been employed by respondent for many years. He occupied an executive position entailing the performance of office work. He had suffered a myocardial infarction in 1952 at his home, necessitating absence from his work for a period of four months. Concededly that heart attack was unrelated to his employment.
Although not feeling well when he arose on the morning of June 15 aforesaid, decedent had gone to work. At about 10:00 A.M., while at his desk in respondent's plant, he suffered a heart attack of sufficient severity to cause his temporary partial collapse. Responding to a telephone call to the plant infirmary a doctor arrived in an ambulance. By this time Tritschler had rallied somewhat. The doctor advised Tritschler to return with him in the ambulance *119 to the infirmary but Tritschler refused. The doctor then suggested that decedent "have someone drive him over in his or someone else's vehicle." He told the doctor that he would go to the infirmary "in a few minutes." He did so but walked the intervening distance of 775 feet. The proofs showed that the temperature was then between 73° and 77° Fahrenheit. On arrival at the infirmary he collapsed. Examination disclosed that he was "acutely ill." He was "cyanotic, breathing stertorously, unconscious, sweating profusely." He rallied temporarily under medication but as the day progressed his condition worsened. He died at 4:00 P.M.
Although the early morning attack occurred while Tritschler was at his office, not only was no claim made by petitioner that the attack then suffered was work-connected, but Dr. Saul Lieb, testifying for petitioner, specifically conceded that the fact that the aforesaid attack occurred while decedent was at work was purely "coincidental" and stated that the "myocardial infarction onset" occurred "in the natural course of the underlying disease while he [Tritschler] was working at his desk on June 15, 1955."
Petitioner's claim that her husband's death was due to "an accident arising out of and in the course of his employment" is, as above noted, based solely on her contention that the fatal attack was the result of the exertion and strain allegedly flowing from decedent's aforesaid walk to respondent's infirmary following the coronary occlusion suffered at the office.
Dr. Lieb, an internist specializing in cardiovascular disease, responding to a hypothetical question propounded by petitioner's counsel, expressed the view that decedent had suffered "a myocardial infarction in 1952 and * * * on June 15, 1955 had a pre-existing heart condition of major degree." Then, after referring as above noted to the actual onset of the infarction suffered by decedent at his desk on the latter date, he testified as follows:
*120 "* * * He thereupon was observed by his secretary to look better and said that he felt better. In my opinion, this merely signified that he had gotten over the first initial shock of the myocardial infarction and had a false sense of improvement, which, of course, proved later to be fallacious. * * *
By the time he was seen by Dr. King again about ten minutes later in the Dispensary, the picture was that of a myocardial infarction; he was in extremis. In other words, it is my opinion that when a man is in the condition described by Dr. King when he came into the Dispensary and observed this man being cyanotic and breathing noisily and with an imperceptible pulse and unobtainable blood pressure, a man like that, the die is cast. I mean, he is through. I have never seen anyone survive that. All of the rest of the treatment, of course, that they gave is indicated. We all do it, but I have never seen anyone saved by such treatment. Their blood pressure comes up and they look better for a few hours. You keep them surviving for a few hours more than what you would otherwise, but the condition when they appear that way is invariably fatal. Now, it is my opinion that this radical change within ten minutes from the appearance of what apparently was a mild type of myocardial infarction to one in which the man was unconscious and in extremis was brought about by his walking from his desk to the Plant Dispensary in conditions in the open, exposed to the heat described, which was referred to the burden upon his coronary circulation. The walking in itself was a burden upon his coronary circulation. He would have been well-advised, of course, to have gone over in the ambulance and been put to bed and gotten prompt treatment. It is my opinion that the sudden change in this picture from that of a mild myocardial infarction to one in extremis, was brought about within ten minutes by his walking outside under conditions of heat."
Emphasizing the view above expressed, the witness on cross-examination reaffirmed his previously expressed opinion that the circumstance of decedent's "employment" which he believed had a causal relationship to decedent's death, was not the fact that Tritschler had a heart attack while working at his desk, but the fact that he "walked" from an air-conditioned office to the infirmary "outdoors and in the heat." Still later in cross-examination he added: "Any walking at all, since he [decedent] had the onset of the attack, is contra-indicated and this distance certainly is more contra-indicated and this type of distance is a substantial distance for someone to walk who has an acute coronary."
*121 Dr. Jerome G. Kaufman, also a specialist in internal medicine and cardiovascular disease, in response to a hypothetical question presented by respondent found no such causal connection. Starting with decedent's known history of heart disease, his prior heart attack in 1952, and his attack at 10:00 A.M. on June 15 followed by the collapse at the infirmary shortly thereafter, the doctor stated that in his opinion decedent while in his office had suffered a myocardial infarction as the result of a coronary occlusion. He concluded as follows:
"* * * From that point on it is speculative as to why he died. One cannot tell without an autopsy as to what he died from nor can one tell that he died just because he took a walk of some 800 feet. Many individuals die who are left in a spot in which the attack starts. Many die in the ambulance going to the hospital and many die in the hospital. From the point that a myocardial infarction starts, the rest is speculative and one cannot speculate that his death was caused by the fact that he walked this distance. So, therefore, in my opinion the onset of the attack certainly was not related to his employment and I don't believe anybody could feel that this man died because he took a walk of 800 feet."
The judge in compensation and the County Court concluded that the proofs furnished no justification for an award to petitioner.
Despite the novelty of the theory on which petitioner rests her claim its merit is to be tested by basic, well recognized principles. Complying with Russo v. United States Trucking Corp., 26 N.J. 430, 435 (1958), we have analyzed the evidence "to determine the facts and evaluate them." In doing so we have given "due regard to the opportunity of the hearer of the evidence to judge of the credibility of the witnesses" and have given "full and respectful consideration of the views expressed, on both fact and law," by the Division and by the County Court. Russo, supra, at p. 435.
In assaying petitioner's claim that decedent's fatal heart attack was work-connected and his death compensable, we recognize initially that "it is to be presumed that * * * *122 death from heart disease is the result of natural physiological causes, and the onus is upon the claimant to prove by a preponderance of the probabilities that the employment was a contributing cause of the * * * death." Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 138 (1958); Yeomans v. City of Jersey City, 27 N.J. 496, 509 (1958). Petitioner is entitled to prevail only in the event that the evidence preponderates in favor of the hypothesis tendered by her. Augustin v. Bank Bldg. and Equipment Corp., 41 N.J. Super. 187 (Cty. Ct. 1956), affirmed 44 N.J. Super. 242 (App. Div. 1957). Recognizing that "the test is probability rather than certainty," Gilligan v. International Paper Co., 24 N.J. 230, 235 (1957), the burden of proof is sustained "if under the evidence the tendered hypotheses become a rational inference based upon the preponderance of the probabilities." Kream v. Public Service Coordinated Transport, 24 N.J. 432, 436 (1957); Pellegrino v. Monahan McCann Stone Co., 61 N.J. Super. 561, 572 (App. Div. 1959), affirmed 33 N.J. 73 (1960).
So tested we are convinced from our analysis of the evidence that petitioner's tendered hypothesis of a work-connected accident is not sustainable. Basic to our determination is the fact that decedent's heart attack in 1952 at his home and the attack on June 15, 1955 at his office admittedly had no causal connection with his employment. The proofs convince us that when decedent undertook to walk to the infirmary he was very ill and was still suffering from the effects of the occlusion which had occurred moments before.
We reject petitioner's contention that the walk to the infirmary under such circumstances can be deemed a work-connected "event or happening" on which she may rest her claim for compensation. Compare Jacobs v. Kaplan, 56 N.J. Super. 157 (App. Div. 1959); Black v. Mahoney Troast Construction Co., 65 N.J. Super. 397 (App. Div. 1961). Petitioner's counsel asserts that the fact that the infirmary was located on respondent's property and its facilities made available for the benefit of its employees, justifies *123 the contention that the decedent's act of walking there for medical aid was a work-connected effort which was a contributing cause of his death. Such an argument is without any merit. The mere fact that a respondent had an infirmary on its property and decedent elected to walk to it for help, instead of going home or to a hospital or to his own doctor, after suffering a heart attack concededly unrelated to his employment, affords no justification for the contention that the claimed effect of the effort thus expended may constitute an "accident arising out of and in the course of his [decedent's] employment."
But of even greater significance, it is clear that the only logical conclusion from the proofs is that decedent's death was the end result of his pre-existing heart disease  "the termination of the degenerative process." Jacobs v. Kaplan, supra, 56 N.J. Super., at p. 166; Loew v. Borough of Union Beach, 56 N.J. Super. 93 (App. Div. 1959), certification denied 31 N.J. 75 (1959). As above noted, Dr. Lieb testified that under the circumstances any exertion was "contra-indicated." The temperature (which even petitioner's counsel does not label as excessive or oppressive) and the fact that during the walk decedent was exposed to the sun are merely added factors emphasizing the inadvisability of decedent's course of action while still suffering from the effect of a heart attack. The proofs afford no support for the contention of petitioner's counsel that we should conclude that the collapse which followed the walk was a new and separate attack or an aggravation of the earlier attack, caused by the walk, and that it was therefore causally related to the employment.
We are convinced that Tritschler's death was the inevitable culmination of the natural progress of his heart disease.
The judgment of the County Court is affirmed.