UNION PRODUCING COMPANY, et al. *v.*
DEPENDENTS OF SIMPSON, DECEASED

No. 43208 November 23, 1964 168 So. 2d 808

*Watkins & Eager,* Jackson, for appellants.

*J. A. Travis, Jr.,* Jackson; *Holmes & Cortright,* Yazoo City, for appellee.

Gillespie, J.

The widow and sole dependent of Emmette Clinton Simpson, deceased, hereinafter called Employee, made claim for death benefits under the Workmen's Compensation Law against Union Producing Company, the Employer, and its compensation carrier. After a lengthy hearing, the attorney-referee awarded claimant death benefits. The Workman's Compensation Commission affirmed, and on appeal to the circuit court, the Commission's award was affirmed. The Employer and its carrier appeal to this Court.

Employee died of myocardial infarction following coronary occlusion, after suffering for a long period of time from progressive artheroschlerosis.

Employer operates 125 oil wells in the Tinsley Field, and maintains certain buildings on its leases at Tinsley, about twelve miles from Yazoo City, Mississippi. The production office is located about twenty steps from the warehouse, in which latter building the supplies are kept and issued to the crews operating Union's oil wells in the Tinsley Field.

Prior to 1951 Employee had been working for Union in Alabama and in that year was transferred to Mississippi as a clerk in the production office at Tinsley. Up until about a year prior to his death, his work was exclusively in the production office and consisted of office work. He lived in Yazoo City and commuted to and from work in his own automobile or that of a co-employee under a car pool arrangement. About a year prior to his death, Employee began working four hours a day from Tuesday through Friday in the warehouse office, and the remaining twenty-four hours a week he continued to work in the production office. His work

in the production office consisted chiefly in making daily reports to the Jackson and Shreveport offices of the operation of Union's wells, occasionally answering the telephone, paying bills, and making up weekly and monthly reports to the Jackson and Shreveport offices.

The proof showed without dispute that Employee had no supervisory duties, and he had ample time to do his work, and was not crowded or rushed for time. The production office was air-conditioned. The steps leading up to the production office contained only one or two risers. His work required no lifting, stooping or physical exertion, it being solely paper work.

The work in the warehouse was done in an air-conditioned office and Employee's work there consisted of transferring requisitions and orders to the ledger and other paper work; he worked under the storekeeper, who completed any work that might not be finished by Employee during the four hours he worked in the warehouse from Tuesday through Friday of each week. There were two or three steps from the ground to the warehouse office. There was no lifting, stooping or straining involved in this work, since it was solely paper work. Occasionally Employee would go into the warehouse to point out an object to some of the other employees but he was not required to manually handle anything in the warehouse. The warehouse itself was not air-conditioned and would become hot, but it was ventilated with a fan.

After Employee died, Union did not employ anyone in his place. It was not necessary to do so because the work he had been doing was absorbed by the storekeeper in the warehouse and by other employees in the production office.

Deceased Employee was 49 years old when he died. He had had high blood pressure for approximately eight years, which had gotten progressively worse, and for a long time had suffered from coronary atherosclerosis.

He had bursitis in his shoulders, from which he suffered considerably; he had a dislocated disc in the cervical region which caused pain and discomfort. He contacted filariasis while in the U. S. Marines which caused swelling of the hands, feet and legs. He had hypertension and nervousness, and suffered pain in his chest, arms and back and shortness of breath. He had an episode about five months before he died when he was mowing his lawn at home and complained of suffering from his chest but recovered after a short rest. Employee had recently reduced from an overweight condition of 231 pounds to about 181 pounds.

Employee's wife, claimant, testified that Employee told her of the various pains from which he suffered and that he would hurt if he sat in one position for any considerable length of time; that he worried about the possibility of having to give up his job because of his physical ailments. His wife testified also that he had suffered a great deal from indigestion.

Employee had worked from Monday until Friday morning as usual following a three-week vacation, which ended the weekend prior to his death. On the morning of his death, Employee arose at 6 A.M., ate a normal breakfast, left home about 6:45 A.M., and drove to Tinsley. Emmett Lee King, who was working that week as storekeeper, rode with him. Employee appeared to be normal. When he got to his place of employment, he went into the production office for a few minutes while King went to the warehouse office and turned on the air conditioner. After about ten minutes Employee walked approximately twenty steps from the production office to the warehouse office, and sometime later began his duties of assisting King in checking the ledger against the monthly reports. One read and the other checked. This work was described by King as tedious.

King was on one side of the desk and Employee was on the other. They had been working about an hour

when Employee took a break and obtained a Coca-Cola from a machine outside the office. After they had worked about forty-five minutes longer and completed the report, Employee leaned on the desk and said he believed he was having a heart attack. King suggested that they do something about it but Employee said, "No, it is probably indigestion . . . . it will pass on in a minute, usually do." King asked him if he wanted a doctor, or to go to the hospital, or to call an ambulance, but Employee declined. Employee then said he was going over to the other office and he walked over to the production office. A short time later, King went over to the production office to check on Employee and found him sitting at the desk. Employee said he didn't feel very well and King again suggested that he get a doctor or do something but Employee said, "No, I will be all right in just a few minutes."

Sometime thereafter, about an hour or hour and a half after Employee first complained, Employee asked Edward Sanders, the senior clerk in the production office, to take him home. Sanders assisted him in getting up from his desk and in walking to Employee's automobile, where he got on the back seat. After they started toward Yazoo City, Employee was "thrashing around on the back seat" and Sanders stopped and got a young man to ride with them in case he needed help. As they went into Yazoo City, Sanders stopped and telephoned a doctor to be at the emergency room of the Hospital. Soon after Employee was taken to the hospital he died.

Dr. Moorehead had been Employee's doctor and was also the company's doctor, and came to the hospital at the time of his death. He did not testify but wrote a letter which is in the record wherein he stated that in his opinion the underlying cause of Employee's terminal attack was atherosclerosis and this condition was one of long standing. "My opinion is based on the fact that for sometime prior to the terminal attack, he suffered

with hypertension as evidenced by elevated blood pressure, excessive cholesterol in the blood stream, and chronic indigestion. The fatal attack itself is the final evidence of a diseased cardio-vascular system. As to whether or not 'Mr. Simpson's heart attack was caused by his employment,' it is my impression that the underlying cause of the coronary occlusion was the pre-existing atherosclerosis, however, it may probably be true that Mr. Simpson's work activities on the day of his death were a contributing factor in precipitating the terminal attack.''

Dr. Thaddeus Labecki, Consultant Director of the Heart Disease Control Unit of the Mississippi State Board of Health, cardiologist, testified in response to a hypothetical question covering nine pages in the record. He was of the opinion that death was due to a myocardial infarction and that Employee had a pre-existing coronary atherosclerosis, and suffered ''from apparent impending myocardial infarction.'' He was of the opinion that the work activities of the Employee aggravated, precipitated, hastened, contributed to, and/or worsened the condition of Employee. Subsequent questioning shows that Dr. Labecki was of the opinion that the onset of the heart attack began about ten o'clock, more than an hour before he started to the hospital; that the pre-existing condition had reached a stage where Employee ought not to have been at work at all, and that any activity whatsoever would aggravate his pre-existing condition; that he should have been under medical care at the time of the onset of his heart attack; that after the onset of the heart attack and until he was taken to the hospital his continuing on the job worsened his condition, and his chances for recovery would have been better had he received immediate medical attention. Dr. Labecki summarized the basis of his opinion in the following answer: ''. . . a man who is impending to have a myocardial infarction — to him any activities

become tedious, tiring and contributory. After he had already started to have the heart attack, under medical care and complete bed rest, under sedation, is 'the only hope for recovery.''

It was stipulated that Dr. T. E. Wilson and Dr. Jos. P. Melvin, Jr., were on call and standing by to testify; that both are recognized and qualified cardiologists; that they would testify substantially the same as Dr. Labecki if the same hypothetical question was propounded to them.

Dr. William H. Rosenblatt, cardiologist, testified in response to the same hypothetical question propounded to Dr. Labecki, and he was of the opinion that there was no causal connection between Employee's work and his heart attack and death and it was merely coincidental that the terminal attack took place while Employee was at work.

Dr. Leo Elson, Chief of the Cardiovascular Department of the Veterans Administration Hospital, Jackson, Mississippi, was asked the same hypothetical question as the other doctors and he was of the opinion that there was no causal connection between the work Employees was doing and his heart attack.

The question in this case is whether the Commission's award was supported by substantial evidence of causal connection between Employee's work and his death. Claimant's doctor based his opinion on work connection on the fact that because of Employee's pre-existing coronary insufficiency, or atherosclerosis, he should have been in bed at home or in a hospital rather than at work, and on the fact that his chances of recovery would have been better if he had been put in the hospital under sedation immediately upon suffering pain about an hour and a half before he left his place of employment.

 █ We are of the opinion that there was no substantial evidence of causal connection. Dr. Labecki's opinion that Employee should have been in bed or in

a hospital rather than at work is necessarily based on hindsight. Conceding that Employee should have been in bed, it does not follow that his work precipitated his heart attack. If there was any contributing factor to the attack other than the progress of the disease, it was not the work Employee was doing but the ordinary wear and tear of life to which every person is subjected who is not in bed. This, in substance, was the effect of Dr. Labecki's testimony. This Court has never held that the mere presence of an employee at work is sufficient in itself to constitute causal connection. We are also of the opinion that causal connection between the work and Employee's death was not established by the fact that he should have gone to the hospital when he first became ill about 10:30 A.M. Causal connection may not be established merely by showing Employee declined offers to be taken to the hospital because he thought his discomfort would pass away, as it had done in the past.

In 1 Larson, Workmen's Compensation Law, Sec. 38.83 (1952), it is said: "There must still be an unexpected result, and there must still be an exertion — some exertion — capable medically of causing the collapse. This can by no means be taken for granted. If heart failure overtakes the employee while he is merely waiting for a bus or an elevator, you simply have no strain at all to provide an accidental result of employment activity. The natural progress of the disease may bring it to its fatal climax during working hours, but if the employee's activity at the time involves no effort, or effort which cannot support medically a causal connection, it can be rightly said that the outcome was neither accidental nor causally related to the employment. It was not accidental simply because it did not happen by chance; it happened by the inexorable march of the disease."

The foregoing has been cited with approval in Franks v. Goyer Co., 234 Miss. 833, 108 So. 2d 217 (1959); Rushing v. Water Valley Coca-Cola Bottling Co., 232 Miss. 338, 98 So. 2d 870 (1957), and Ingalls Shipbuilding Corp. v. Howell, 221 Miss. 824, 74 So. 2d 863 (1954).

■■ ■ Therefore, it appears to us that the basis of Dr. Lebecki's opinion of causal connection is not legally sufficient to establish causal connection. To hold otherwise would make every employer an insurer of his employees against heart attacks having their onset while the employee is on the job. This record overwhelmingly shows that Employee's death was the result of the natural progress of coronary insufficiency, or atherosclerosis, which reached its climax during Employee's working hours, and any connection between his work and his death was coincidental. The following cases from other courts support our holding: U. S. Casualty Co. v. Thomas, 106 Ga. App. 441, 127 S.E. 2d 169 (1962); Tritschler v. Merck & Co., 66 N.J. Super. 116, 168 A. 2d 666 (1961); Jacobs v. Kaplan, 56 N.J. Super. 157, 152 A. 2d 145 (1959); Di Cicco v. Liebmann Breweries, Inc., 201 N.Y.S. 2d 123 (1960); Goldman v. White and Case, 193 N.Y.S. 2d 100 (1959). In several of the cited cases it was held that where the stress and strain of the job are no more than the ordinary wear and tear of life, there is no legal connection between a heart attack and the work.

■■■ ■ Appellees rely on Russell v. Sohio Southern Pipe Lines, Inc., 236 Miss. 722, 112 So. 2d 357 (1959), which is not in point because the question there was whether the employer rebutted the presumption of causal connection, and the Court held that it had not done so. In the instant case the facts were developed in full, including Employee's pre-existing condition, the details of his work, what he did on the morning the heart attack occurred, and what happened until his death, including the cause thereof. The evidence having been

fully developed, the presumption disappeared. Highway Patrol v. Dependants of Neal, 239 Miss. 505, 124 So. 2d 120 (1960).

In Meridian Mattress Factory v. Morris, 239 Miss. 792, 125 So. 2d 533 (1960), the employee had worked late the night before and on the morning of his attack had walked up a flight of nineteen steps at least more than one time during the morning before his heart attack. We do not think that case is in point. In the instant case, the highest steps Employee had to climb required about three steps.

Highway Patrol v. Neal's Dependents, *supra,* does not detail the evidence but the Court's evaluation thereof is reflected in the statement that "the overwhelming weight of the evidence reflects that the activities and duties of his employee aggravated, accelerated, or combined with his pre-existing disease to produce his death."

In summary, we hold that since Employee was not under any mental strain resulting from his work, and the physical efforts of his job, in the words of claimant, requiring him to lift nothing heavier than a pencil and a piece of paper, it cannot be said that there is any substantial connection between his terminal heart attack and his employment. For the reasons stated, the case is reversed and judgment rendered here for appellants.

Reversed and judgment here for appellants.

*Kyle, P. J., and Ethridge, Rodgers and Patterson, JJ.,* concur.