192 So.2d 266 (1966)
Samuel B. KERSH
v.
GREENVILLE SHEET METAL WORKS and Federated Mutual Implement and Hardware Insurance Company.
No. 44136.
Supreme Court of Mississippi.
November 21, 1966.
Pyles & Tucker, Jackson, Willard L. McIlwain, Greenville, for appellant.
Daniel, Coker & Horton, Alben N. Hopkins, Jackson, for appellees.
*267 GILLESPIE, Presiding Justice:
In this workmen's compensation case Samuel B. Kersh applied for benefits, and after a hearing and order denying the claim was entered by the attorney referee. On appeal to the full commission the order denying compensation was affirmed, and the circuit court affirmed the commission. The claimant appeals to this Court.
Claimant was employed as office manager and bookkeeper by Greenville Sheet Metal Works on April 16, 1963. He worked until September 5, 1963, when he was directed to go to two towns approximately sixty miles from Greenville, Wilmot and Dermott, Arkansas, to collect some accounts. He drove to Dermott and went to the Dermott Gin Company, arriving there about eleven o'clock. The person he wished to see was not at the gin, and claimant drove to a restaurant and ate lunch, and then returned to Dermott Gin Company about two o'clock in the afternoon. Mr. Bullock was in the office, and appellant attempted to collect two invoices for Greenville Sheet Metal Works. There is some conflict as to what took place while claimant was at the gin. He contends that he was irritated and made very nervous by the language and attitude of Mr. Bullock, but Mr. Bullock testified by stipulation that nothing unpleasant happened. Claimant collected one invoice, but Mr. Bullock declined to pay the other on the ground that the work had not been done in a satisfactory manner. Although claimant was not a sheet metal man, he went with Mr. Bullock to the gin to look at the defective work.
After leaving the Dermott Gin Company and driving his automobile for ten or fifteen minutes, claimant broke out in a cold sweat and suffered chest pain which radiated into his left arm. He pulled to the side of the road and stopped for a few minutes, but the pain grew worse. He then drove to St. Mary's Hospital at Dermott. On entering the hospital he requested oxygen and something for pain. He stated that he was dazed and in severe pain. Claimant was put under the care of Dr. Thomas Wilson of Dermott. He remained in the hospital from September 5 to September 9, when he was transferred by ambulance to the hospital in Greenville. He was treated there by Dr. Lenoir. He left the hospital on September 18, and rested at home for another week. When he returned to work at the Greenville Sheet Metal Works on October 7, 1963, his employer told him, "I can't take you back on your job since you had a heart attack because if I do, my workmen's compensation will be increased so much until I can't afford it." Claimant testified that he had been unsuccessful in finding another job, and that he is now self employed, working as a public accountant and an automobile leasing agent, earning less than he did when he worked for Greenville Sheet Metal Works.
Claimant was examined by Dr. Earl Fyke on December 18, 1963, and by Dr. Arthur St. Clair on March 16, 1964.
It is contended by appellant that he is entitled to the benefit of the presumption that his attack arose out of and in the course of his employment, and that this presumption has not been rebutted. The cases in which this Court has applied the presumption have been death cases where it was shown that the employee was found dead at a place where his duties required him to be, and it was held that under such circumstances there is a rebuttable presumption that the death arose out of and in the course of his employment.
In a recent case, Mississippi State University v. Hattaway's Dependents, Miss., 191 So.2d 418, decided October 24, 1966, the Court applied this presumption, although there were witnesses to all the claimant said and did from the time he arrived at work at 7:30 a.m. until he became ill, collapsed, and died a short time later. However, in that case the cause of death was not known. Hattaway is authority for the proposition that if *268 an employee becomes ill and dies on the job and the cause of death is unexplained, the presumption that his death arose out of and in the course of his employment arises.
In the persent case the claimant did not die. The facts concerning claimant's preexisting condition, what he did on the day of the episode or attack, his previous medical history, and subsequent medical examinations, reveal the nature and cause of the attack. It cannot be said that the episode of September 5, 1963, was unexplained. If there was any presumption of causal connection, it was rebutted and disappeared, and the case must be decided on the evidence. Union Producing Co. v. Dependents of Simpson, 251 Miss. 183, 194-195, 168 So.2d 808, 812-813 (1964); Highway Patrol v. Dependents of Neal, 239 Miss. 505, 512, 124 So.2d 120, 125 So.2d 544 (1960).
It is doubtful that a presumption of causal connection arises at all unless the claimant dies, because, if he lives, it is within his power, and it is his duty, to meet the burden of showing that his injury arose out of and in the course of his employment. When the facts raise the presumption and there is no rebutting evidence the claim is compensable, because of a rule of substantive law that compels the conclusion of causal connection. However, when the opponent offers evidence to the contrary, the presumption disappears as a rule of law, and the case is decided on the evidence, free from any rule. 9 Wigmore, Evidence § 2491 (3d ed. 1940). The facts which give rise to the presumption may involve permissible inferences, and when the presumption disappears because countervailing evidence has been offered, the commission may give such probative force as it deems fit to the fact that the employee was on the job at the time he became ill.
Claimant was hospitalized for fourteen or fifteen days in the early part of 1960, in Cleveland, Mississippi. He was treated by Dr. W.D. Fitzgerald, whose diagnosis was bronchitis, coronary heart disease, ulcerated stomach, and tonsillitis. He was hospitalized again by Dr. Fitzgerald for three and one-half weeks in September 1961, for treatment of coronary heart disease. He was treated with nitroglycerine, demarol for pain, and an anticoagulant called dicumarol. He had recurrent chest discomfort for fifteen days, but thereafter was free of pain. After leaving the hospital on September 18, 1963, he experienced some chest discomfort and would develop chest pains after walking rapidly. This discomfort would be relieved by taking nitroglycerine.
The remaining question for our decision is whether the Workmen's Compensation Commission's order denying benefits is supported by substantial evidence. Whether the duties of employment were a substantial contributing cause of the attack claimant suffered on September 5, 1963, was the central factual issue. In Dunn, Mississippi Workmen's Compensation section 52 (1957), the author synthesizes the holdings of the court with reference to the burden of proof in heart attack cases, as follows:
In heart cases, it is said that the burden, as usual, is upon the claimant and that the rule of liberality cannot dispense with the necessity of proof of facts prerequisite to recovery and that causal connection is one of such facts. The factual issue on this score is usually one for the medical experts and the Commission as triers of the facts, and the Commission may not award compensation in the absence of medical proof to show causal connection. The issue in heart cases is not such as may be resolved upon common or judicial knowledge and this is so although the medical testimony contains an admission of a possibility of causal connection. Also, if the medical proof of disability is undisputed and is not inherently improbable, *269 incredible, unreasonable or untrustworthy, it may not be rejected and must be given effect.
Since the date of the original text of the cited authority, there has been a tendency on the part of the Court to view the testimony as a whole and to apply it liberally in favor of the claimant. A good statement of the prevailing rule is found in Dunn, Mississippi Workmen's Compensation section 53 (Supp. 1965):
(W)hen, from the record as a whole, it is obvious to the court that the denial of an award is contrary to the weight of the evidence and that the denial is manifestly wrong, the decision will be reversed and an award will be entered on appeal.
However, where the medical evidence in a heart case is conflicting, the court will affirm the commission whether the award is for or against the claimant. See cases cited in Dunn, Mississippi Workmen's Compensation section 52 n. 14a (Supp. 1965).
Dr. Wilson first treated claimant on September 5, 1963. He gave oxygen, performed an electrocardiogram, and gave an LDH test. When claimant entered the hospital at Dermott, Arkansas, he was clammy, sweaty, and in pain. The tests given by Dr. Wilson were sent to a cardiologist at Little Rock. They were nonspecific, and were indicative, but not diagnostic of myocardial infarct. The tests were compatible with coronary insufficiency. Dr. Wilson was of the opinion that claimant did sustain heart damage on September 5, 1963. Dr. Wilson testified that claimant did not tell him of any unpleasant experience at the gin. On the question of causal connection, Dr. Wilson's testimony was inconclusive, and he was not sure claimant had an infarct.
Dr. Leon Lenoir, who treated claimant in the hospital at Greenville from September 9-18, 1963, stated that claimant gave him a history which included a statement that he became slightly upset because a customer of his employer had paid only one of two invoices when claimant sought to collect some accounts in Arkansas. Dr. Lenoir's impression was that claimant suffered from "arteriosclerotic disease with acute coronary insufficiency and possible myocardial infarction." He released claimant to return to work October 7, 1963.
Claimant was examined by Dr. Arthur St. Clair, a specialist in internal medicine, on March 16, 1964. He took from claimant a history including a statement that on the trip to Arkansas on September 5, 1963, there was an emotional upset precipitated by inability to collect the full amount owed and accusations by the customer that the work had not been done satisfactorily. He testified that claimant told him there was no display of anger and no argument, but claimant was considerably upset. Claimant's physical examination was well within normal limits. Electrocardiogram findings indicated some myocardial damage, and Dr. St. Clair was of the opinion claimant had suffered myocardial damage sometime in the past. These findings were nonspecific and were also compatible with an episode of coronary insufficiency. Dr. St. Clair stated that he could not tell with any degree of certainty whether claimant sustained any myocardial damage. On the question of causal connection Dr. St. Clair stated that it was entirely possible that the emotional upset experienced by claimant on September 5, 1963, while collecting in Arkansas contributed to the attack. Dr. St. Clair thought that if claimant's employer had put considerable pressure on claimant (claimant testified that he had), it would contribute to the damage to his heart.
Dr. Earl Fyke, Jr., specialist in internal medicine, examined claimant on December 18, 1963, and studied the results of electrocardiograms and other tests claimant had undergone since the episode or attack on September 5, 1963. Claimant also gave Dr. Fyke a history, and told him no altercation ensued at Dermott, Arkansas on September *270 5, 1963, but that he, claimant, was somewhat disappointed because the customer paid only a portion of the bill and made complaints regarding the work done by claimant's company. Dr. Fyke stated that the electrocardiograms showed changes in claimant's heart, but that a study of the several electrocardiograms made him think the changes were old changes; that there was no evolutionary change following the attack on September 5, 1963, and that there was no muscle damage or permanent change in claimant's heart from the September 5, 1963, episode. He was of the opinion that the attack was the result of a transient lack of blood supply, or coronary insufficiency. Dr. Fyke was of the opinion that claimant did not suffer myocardial infarction on September 5, 1963. He stated that the physicians who treated claimant for this episode correctly treated claimant for myocardial infarction as a precaution. In substance, Dr. Fyke was of the opinion that the episode of September 5, 1963, did not worsen claimant's condition, and that, based on the history claimant gave him, there was no causal connection between claimant's work and the attack.
This Court has stated in scores of cases that the commission is the trier of facts, and that when its order is supported by substantial evidence, the order will be affirmed. This Court in Ingalls Shipbuilding Corp. v. Howell, 221 Miss. 824, 74 So.2d 863 (1954), a case involving a heart attack, quoted from 1 Larson, Workmen's Compensation Law section 38.83 (1965) as follows: "(T)he burden of keeping this class of cases within proper bounds falls squarely on the shoulders of the expert medical witness and the expert trier of fact." 221 Miss. at 831, 74 So.2d at 865. It is the function of the commission to weigh and sift the evidence pro and con on the question of causal connection.
We hold that the commission's order denying compensation was supported by substantial evidence, and the order is affirmed.
Affirmed.
RODGERS, PATTERSON, INZER and ROBERTSON, JJ., concur.