287 So.2d 273 (1973)
MISSISSIPPI RESEARCH AND DEVELOPMENT CENTER and the Fireman's Fund Insurance Company
v.
DEPENDENTS OF Jack Lester SHULTS.
No. 47296.
Supreme Court of Mississippi.
November 19, 1973.
Rehearing Denied January 14, 1974.
*274 Daniel, Coker, Horton, Bell & Dukes, Thomas H. Suttle, Jr., Jackson, for appellants.
Stennett, Wilkinson & Ward, James A. Peden, Jr., Jackson, for appellees.
RODGERS, Presiding Justice.
The dependents of Jack Shults filed their claim to recover death benefits under the Mississippi Workmen's Compensation Act. Several hearings were had before an Attorney-Referee, resulting in an order in favor of the claimants. The Attorney-Referee held that Mr. Shults' heart attack and death constituted an accidental injury arising out of and in the course of his employment and that there was insufficient medical evidence of a preexisting condition to justify an apportionment. A majority of the Workmen's Compensation Commission affirmed the order of the Attorney-Referee. The employer-carrier appealed to the Circuit Court of the First Judicial District of Hinds County, Mississippi, where the order of the Workmen's Compensation Commission was affirmed.
The employer-carrier has appealed to this Court and contends that the order of the commission is erroneous because: (1) It is contrary to the overwhelming proof; (2) There is no substantial evidence to show that the deceased suffered an accidental injury in the course of his employment; and (3) The order was erroneous in holding that there was no substantial medical evidence showing a preexisting disease, handicap or lesion which was a material contributing factor in the cause of the decedent's death.
The testimony shows that the deceased, Jack Shults, was forty-five (45) years old at the time of his death. He was married *275 and the father of two (2) minor girls. He had been employed by the Mississippi Research and Development Center since 1967. He was in charge of the personnel section and the general services section. In addition to his other duties, he supervised the mail department, secretary pool group, and was responsible for the repair and upkeep of personal property such as chairs, desks, etc.
Mr. Shults was an unusually hard working employee. He was conscientious, capable and often worked hours after five o'clock "quitting time". He had been in charge of moving to the new R & D building and, because of conflicts with the director of the Mississippi Research and Development Center (hereafter called R & D Center) he suffered a great deal of frustration. He was under a great deal of pressure and strain because of his work. A marked change was noticed in the personality of the deceased just prior to his death. He became quiet, morose and moody. In time, he became very nervous, and began to bite his fingernails. Mr. Shults began to have pain in his back, left arm and shoulder. He also suffered nausea at times. On October 31, 1970, Mr. Shults' condition became so painful that he was forced to consult a doctor. The doctor was of the opinion at the time that the patient's condition was not a coronary deficiency. He gave him a prescription and released him. When Mr. Shults returned to his home, his pain continued to annoy him. Mrs. Shults decided to take him back to the hospital, but before she could do so, he fell dead on the kitchen floor.
Dr. Joseph P. Melvin, Jr., an expert cardiologist, was offered as a witness for the claimants. A postmortem examination was introduced. Dr. Melvin stated that the cause of the death of Mr. Shults was an acute coronary occlusion with myocardial infarction. The doctor was given a long hypothetical question covering the work activity of Mr. Shults and was asked whether or not, in the opinion of the witness, the heart attack and death of Mr. Shults were brought on by the physical, mental and emotional stress of his employment. The doctor replied that in his opinion there was a causal connection between Mr. Shults' employment and the resulting heart attack.
Dr. Earl Fyke, an expert in internal medicine including cardiology, was introduced as a witness by the employer-carrier. He, too, was given a long hypothetical question giving the background of the work activity of Mr. Shults, and also the postmortem indicating atherosclerosis. He was then asked whether or not the work activity of Mr. Shults was the cause of his death. The doctor replied:
"It would be my opinion that he died of coronary artery disease, which culminated in the occurrence of a heart attack of source. Very probably and in my opinion the onset  sudden onset late that evening when he was  when he died at home in the kitchen of an arrhythemia, a rhythm disturbance or a sudden heart block, which rendered the heart muscle incapable of pumping blood adequately, thereby depriving the vital structures, particularly the brain, of adequate blood supply and thereby accounting for this man's sudden death."
He stated that atherosclerosis is a degenerative progressive disease which is caused by obesity, heredity or stress.
Section 6998-04, Mississippi Code 1942 Annotated (Supp. 1972) provides:
"Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease."
The phrase "in the course of employment," does not mean that the worker must have died on the job or on the premises of the employer.
The rule mentioned in Dunn's work on Mississippi Workmen's Compensation has *276 been expanded. The author pointed out that under the rule in Mississippi in heart cases, the injury must be shown to have arisen within the time and space boundaries of the employment and within the course of activity whose purpose is related to the employment.
He expressed his conclusion in the following language:
"It is not necessary that the acute attack happen while the employee is actually in the process of labor on the job or even that it happen on the job during working hours. While the absence of active work at the time of the attack may make proof of causal connection more difficult or even impossible, the mere fact that it occurs after the day's work has ended does not disqualify the claim, provided proof of causal connection is made.
* * * * * *
Remoteness in point of time is, therefore, important only as it may affect medical opinion on the ultimate factual issue of causal connection, . .." Dunn, Mississippi Workmen's Compensation, Section 95, at 125-126 (2d ed. 1967).
Professor Larson has this to say on the subject of "course of employment":
"It does not say that the injury must `occur' or `be manifested' or `be consummated' in the course of employment. It merely says that it must `arise ... in the course of employment.' `Arising' connotes origin, not completion or manifestation. If a strain occurs during employment hours which produces no symptoms, and the claimant suffers a heart attack as a result some time after working hours, the injury is compensable." 1 Larson, Workmen's Compensation Law, Section 29.22, at 5-308 (1972).
The conclusion of "causal connection" between the injury and the employment must of necessity be gleaned from the medical testimony in cases which are not apparent to the layman. Thus, we have said that "In heart attack cases such as this, the factual issue of causal relationship is usually one for the medical experts and the triers of the facts." Thornbrough Well Servicing Company v. Brown, 223 Miss. 322, 325, 78 So.2d 159, 160 (1955).
We said in Union Producing Company v. Dependents of Simpson, 251 Miss. 183, 169 So.2d 808 (1964): "... [W]here the stress and strain of the job are no more than the ordinary wear and tear of life, there is no legal connection between a heart attack and the work." [251 Miss. at 194, 168 So.2d at 812.]
This does not mean, however, that where one is subjected to extraordinary mental and physical stress and strain brought about by one's employment, his resulting heart attack is not compensable, just because it is constant and occurs over a period of several months.
We said in Mississippi Ass'n. of Insurance Agents v. Dependents of Seay, 218 So.2d 413 (Miss. 1969) "... [A]n employee's heart attack may be causally connected with his work although his coronary attack occurs after he has completed his daily work and sometimes while he is in bed resting." [218 So.2d at 417].
We also said in Ingalls Shipbuilding v. Howell, 221 Miss. 824, 74 So.2d 863 (1954):
"This case hinges on the question of causal connection; if Howell's work caused the heart attack or in any manner aggravated, accelerated or contributed to the attack, then Howell's heart attack is compensable." 221 Miss. at 830, 74 So.2d at 864-865.
It will be recalled that Dr. Melvin testified that in his opinion there was a causal connection between Mr. Shults' employment and the heart attack. Dr. Earl Fyke testified on cross-examination as follows:
"Q. And that, is that would I presume over a period of years that excessive *277 stress would accelerate the progression of atherosclerosis?
A. Yes. I think that undue stress would accelerate the progression of atherosclerosis and I  as I said before this has been proven in animals and assumed to be true in men, but we are trying to equate a factor which cannot be measured. I feel that it is a definite factor in this disease myself."
The Workmen's Compensation Commission is the trier of facts and where the evidence substantially supports the order of the commission, we will not disturb its findings. New and Hughes Drilling Company v. Smith, 219 So.2d 657 (Miss. 1969).
We are of the opinion that the facts shown in the record are ample to sustain the holding of the commission that Mr. Shults' heart attack was causally connected with his employment.
On the other hand, we are of the opinion that the judgment of the circuit court and order of the commission must be reversed because of the failure of the commission to apply the apportionment part of the Workmen's Compensation Act. The pertinent part of the act is as follows:
"Where a preexisting physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury." Sec. 6998-04, Miss.Code 1942 Ann. (Supp. 1972).
It is true, of course, that the burden is upon the employer to prove that there was a preexisting disease or lesion which was a contributing factor in causing the injury or death. Dunn, Mississippi Workmen's Compensation, Section 55, at 62-63 (2d ed. 1967).
The testimony in the instant case does not show that there was any outward sign or appearance to indicate a preexisting disease. However, the postmortem examination revealed signs of coronary atherosclerosis.
Dr. Fyke, the expert witness introduced by the employer, testified that in his opinion the blood vessels of the deceased Mr. Shults, had narrowed seventy-five (75) to eighty (80) percent for some time before his death as indicated by the pain he was suffering. He testified as follows:
"Now, my opinion as to the causal relationship in this instance would be that certainly the man's life, the passage of time, the stresses of whatever dating back for 45 years had to do with the development of the coronary atherosclerosis, which obviously is the condition which eventually led to his death."
The medical witnesses both agree that Mr. Shults was suffering from atherosclerosis and that this disease played a part in his death.
There are several cases reported from this Court in which the facts are similar to the instant case involving heart attacks where the testimony showed a preexisting heart disease. This Court permitted a reduction of the award by apportionment in those cases in compliance with Section 6998-04, Mississippi Code 1942 Annotated (Supp. 1972). See Southeastern Constr. Co. v. Dodson's Dependent, 247 Miss. 1, 153 So.2d 276 (1963); Federal Compress & Warehouse Co. v. Clark's Dependent, 246 Miss. 868, 152 So.2d 921 (1963).
In Youngblood v. Ralph M. Parsons Company, 260 So.2d 188 (Miss. 1972) this Court held that although the expert medical testimony indicated that the deceased had been suffering from atherosclerosis prior to his injury, still, where there had been no functional disability prior to claimant's injury, the testimony was insufficient to substantiate a finding of the commission that claimant's disability was entirely due to his preexisting disease. We reversed *278 and remanded the case to the commission to determine the degree of claimant's permanent disability to be apportioned to accord with claimant's preexisting infirmity which contributed to claimant's disability.
We, therefore, affirm the judgment of the circuit court and the order of the Workmen's Compensation Commission as to the compensability of the claim, but we reverse the judgment and order as to apportionment of the award. We remand this case to the Workmen's Compensation Commission for the purpose of determining the amount to be reduced by that proportion such preexisting disease contributed to the death of Mr. Shults.
Affirmed in part; reversed and remanded to the commission for determination in accord with this opinion.
PATTERSON, SMITH, ROBERTSON and SUGG, JJ., concur.