**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2001-CT-01025-SCT**

*RAYTHEON AEROSPACE*
*SUPPORT SERVICES AND*
*LIBERTY MUTUAL*
*INSURANCE COMPANY*

*v.*

*ORA MILLER*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 6/1/2001 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | J. KEITH PEARSON |
| | GEORGE E. READ |
| ATTORNEYS FOR APPELLEE: | DAVID C. OWEN |
| | JEFFREY CARTER SMITH |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND RENDERED - 10/30/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1.     Ora Miller, an employee of Raytheon Aerospace Support Services,[1] and while in the course and scope of her employment, tripped and hurt her right hand, left knee and back.  She returned to work a few months later, and the next day, she claims that she sustained a second back injury.  Miller claims that she

---

[1]Liberty Mutual Insurance Co. is Raytheon's  workers' compensation insurance carrier.

reported this injury to her supervisor; however, Raytheon denied receipt of any notice of the injury, sent Miller a letter of suspension, and then terminated her employment for failure to report to work. Raytheon does not dispute the occurrence of the first injury, but it does dispute that a second injury occurred and/or that Miller informed it of the injury.

¶2.     The Workers' Compensation Commission administrative judge awarded Miller permanent total disability benefits for 450 weeks. Raytheon appealed, and the Commission affirmed in part and vacated in part. Miller appealed to the Circuit Court of Lowndes County, which reversed the Commission and reinstated the order of the administrative judge. Raytheon appealed arguing that the decision of the circuit court was not supported by substantial evidence. A divided Court of Appeals found no error and affirmed the circuit court's decision. ***Raytheon Aerospace Support Servs. v. Miller***, 850 So.2d 1159 (Miss. Ct. App. 2002). We granted Raytheon's petition for writ of certiorari, which asserts that the Court of Appeals and the circuit court stepped outside the limited scope of review under the substantial evidence standard and impermissibly reweighed the evidence and made independent determinations regarding the credibility of witnesses.

¶3.     We conclude that the circuit court and the Court of Appeals impermissibly substituted their opinions for that of the Commission. Accordingly, we reverse the judgments of the Court of Appeals and the circuit court and reinstate the Commission's decision.

## FACTS

¶4.     Miller had a history of custodial type, minimum wage jobs. She began working for Raytheon as a custodian and normally worked the third shift. She cleaned various buildings and carried loads of trash weighing up to fifty pounds. On May 8, 1996, in the course of her employment, Miller sustained injuries

2

to her right hand, her left knee and back when she tripped while attempting to get a floor buffer. She reported the injury to her supervisor, and he drove her to the Baptist Memorial Hospital in Columbus, Mississippi, where she received treatment and was subsequently seen by Scott Jones, M.D. Dr. Jones referred her to John Gassaway, M.D. Miller returned to her employer after being released by Dr. Jones to return to restricted duty work. She was informed that Raytheon did not have any "restricted duty" work and sent home.

¶5.    She was off work for about 3 months, during which time she continued to see Dr. Jones and began seeing Manuel Carro, M.D., for treatment and physical therapy exercises. She was released to return to work on or about August 1, 1996, and did return to work on August 5. While performing her job duties in the early morning hours of August 6, Miller allegedly sustained a second back injury when she attempted to retrieve a floor buffer from an overhead locker. She testified that she went to the custodial office and remained there until her supervisor, John Gerhardt, arrived for work. At that time, she allegedly informed Gerhardt of the injury and went home. Her daughter took her to see her family physician, Charles Stanback, M.D.

¶6.    Miller did not return to work that evening (August 6) or the next day, and on August 8 she received a letter of suspension from Raytheon. On August 18, she received a telephone call informing her that her employment had been terminated.

¶7.    Much of the dispute involves Raytheon's denial that a second injury occurred and its denial that it was informed of a second injury. The Court of Appeals found that the testimony offered by Miller's treating physicians (Dr. Carro and Dr. Stanback) corroborated the occurrence of a second injury. The Court of Appeals also found that the testimony of Miller's adult children, who lived with her at the time of

3

the injury, corroborated the occurrence of a second injury. Raytheon's position that it was never informed of a second injury was declared in the form of deposition testimony from John Gerhardt, Miller's supervisor, that he was never informed of the second injury. Raytheon's personnel supervisor, Deborah Junkin, testified that she worked on Miller's workers' compensation claim. She stated that she received a fax from Miller's attorney on August 6, 1996, informing her that Miller would be off work through August 18, 1996, but, that no one informed her that it was because of a second injury. She also testified that she received records from Dr. Stanback's office but that these records were not marked "Workers' Compensation" and that she assumed that Miller was seeing Dr. Stanback for a condition unrelated to work. Raytheon also offered the testimony of a former maintenance control technician, an aircraft technician and two other custodial workers who testified that they had observed and spoken with Miller on the night that the second injury allegedly occurred, as well as in the days following her return to work from the first injury, and that they did not observe Miller to be injured or incapable of performing her duties. Raytheon also presented the testimony of Ruthie Williams. Williams and Miller were reportedly friends until some point subsequent to the injuries when they had a "falling out." Williams's testimony was that Miller was unhappy with the way she was being treated by her employer and that she vowed to find a way to get out of working for the company.

¶8. The administrative judge awarded Miller permanent total disability benefits for 450 weeks. Raytheon appealed, and the Commission found in favor of Raytheon. Miller appealed to the Circuit Court of Lowndes County which reversed the Commission and reinstated the administrative judge's order. Raytheon appealed, arguing that the circuit court applied the incorrect standard of review and that the

4

decision was not supported by substantial evidence. The Court of Appeals found no error and affirmed the circuit court's decision. Raytheon's petition for writ of certiorari followed.

### DISCUSSION

I. **WHETHER THE COURT OF APPEALS WENT BEYOND THE APPLICABLE STANDARD OF REVIEW, IMPERMISSIBLY WEIGHED THE EVIDENCE, AND MADE INDEPENDENT FACTUAL DETERMINATIONS.**

II. **WHETHER THE DECISION OF THE COURT OF APPEALS TO AFFIRM THE CIRCUIT COURT'S ORDER OVERTURNING THE COMMISSION'S ORDER AND REINSTATING THE ADMINISTRATIVE JUDGE'S ORDER WAS ERROR.**

¶9. We find that the circuit court and the Court of Appeals did overstep the very limited scope of review under the substantial evidence and/or arbitrary and capricious standard. The "substantial evidence" scope of judicial review of administrative agency decisions is that the courts may interfere only where the agency action is arbitrary and capricious. Arbitrariness and caprice are in substantial part a function of the presence vel non of credible evidence supporting the agency decision. Where there is such evidence, a reviewing court has no authority to interfere with the decision of the Commission. *Walker Mfg. Co. v. Cantrell*, 577 So. 2d 1243, 1247 (Miss. 1991).

¶10. The Court of Appeals found that the treating physicians were more knowledgeable than were Raytheon's independent physicians who examined Miller solely for the purpose of the workers' compensation evaluation. It determined that John Gerhardt's testimony as to whether Miller informed the company that she had sustained a second injury was not credible coming from someone who, allegedly, once threw Miller's crutches into the trash. The Court of Appeals ruled that Raytheon's witnesses had no

5

personal knowledge of Miller's second injury and that, because she and Miller were no longer friends, Ruthie Williams's testimony had no credibility. Finally, it found that the overwhelming evidence supported an award of total disability to Miller.

¶11.    Under statutory law, the Commission sits as the finder of fact. *Inman v. CocaCola/Dr. Pepper Bottling Co. of Memphis, Tennessee*, 678 So. 2d 992, 993 (Miss. 1996). The Commission's findings of fact are entitled to substantial deference when challenged on appeal to the judiciary. *Vance v. Twin River Homes, Inc*. 641 So. 2d 1176, 1180 (Miss. 1994). A reviewing court's function is as follows:

> When the decision of the commission is before the circuit court on intermediate appeal , that circuit court may not tamper with the findings of fact, where the findings are supported by substantial evidence. . . . Where the circuit court reverses the Commission by simply [substituting] its judgment for that of the Commission without regard to whether the Commission's findings were substantiated by the weight of evidence, the circuit court commits error.

*Natchez Equip. Co. v. Gibbs,* 672 So. 2d 270, 274 (Miss. 1993) (citing *Roberts v. Junior Food Mart*, 308 So. 2d 232, 234-35 (Miss. 1975)). *See also, e.g.*, *Lanterman v. Roadway Exp., Inc*., 608 So. 2d 1340, 1345 (Miss. 1992) (appeals court applies "deferential standard of review" to findings and decisions of Commission). Also,

> [i]t is not the role of the circuit court to determine where the preponderance of evidence lies, when the evidence is conflicting, given that it is presumed that the Commission as trier of fact has previously determined which evidence is credible and which evidence is not. This highly deferential standard of review essentially means that this Court and circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious. . . . [C]aselaw from this Court indicates that

6

it is only in rather extraordinary cases that a circuit court should reverse the findings of the Commission.

*Hale v. Ruleville Health Care Ctr.*, 687 So. 2d 1221, 1224-25 (Miss. 1997) (citing *Metal Trims Indus., Inc. v. Stovall*, 562 So. 2d 1293 (Miss. 1990)).

¶12. An examination of the language of the circuit court order leads to the conclusion that what the circuit court ultimately did was simply to state a preference for the administrative judge's order over the Commission's order. There are many inconsistencies between Miller and her witnesses. McMinn, a co-worker testified regarding Miller's activities the night of the alleged second injury. That testimony cannot be reconciled with Miller's version of that night. Miller's former supervisor, Ruthie Williams, disputes Miller's story regarding the motivation for the claim. As to Miller's allegation that Raytheon was given proper notice, her supervisor and several former coworkers have different versions. Based on those factual findings, the Commission obviously found the defense witnesses to be more credible than Miller.

¶13. The Commission also serves as the ultimate fact finder in addressing conflicts in medical testimony and opinion. "Where medical expert testimony is concerned, this Court has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant." *Kersh v. Greenville Sheet Metal Works*, 192 So. 2d 266, 268 (Miss. 1966). The Commission properly considered treating and examining specialists versus a general practitioner and chose to accept the version of the treating and examining specialists who did not see any of Miller's disabilities as "total" or "permanent" disabilities.

7

¶14.    The Commission found that Miller failed to prove an on the job injury to her back on August 6, 1996, and that she failed to prove any temporary or permanent disability for which she has not received compensation are not clearly erroneous nor contrary to the overwhelming weight of the evidence. The evidence presented in favor of the Commission's decision is clearly more than the "scintilla of evidence" or lack of evidence required for reversal of the Commission's decision.

¶15.    The Court of Appeals majority repeatedly expressed its opinion regarding the credibility of witnesses, without giving any credence to which witnesses the Commission found credible. Pursuant to the substantial evidence standard, an appellate court's belief as to the credibility of witnesses is irrelevant. The Commission, in its order, made a specific factual finding, on the record, that Ora Miller was not a credible witness: "Ms. Miller's story strikes us as contrived or unbelievable." The Commission further made a specific finding that the testimony of Eva McMinn, Jerry Don Burns and John Gerhardt was credible. The Court of Appeals was bound by the Commission's factual findings and the Commission's determinations as to which witnesses were credible. However, the Court of Appeals never discussed the Commission's findings on the credibility of witnesses and improperly substituted its opinion regarding the credibility of witnesses for the findings of the Commission.

¶16.    The record reveals that, despite having been released to return to work on August 1, 1996, Miller did not return until August 5, 1996. When Dr. Riley Jones examined Miller in June of 1998, she did not mention the alleged injury in August of 1996 or an automobile accident which occurred in August of 1997. When a patient gives a history to a physician which is inconsistent with allegations in a workers' compensation case, this is a significant factor in support of denial of a claim. *Hudson v. Keystone Seneca Wire Cloth Co.,* 482 So. 2d 226, 227-28 (Miss. 1986). Incredibly, Miller visited Dr. Stanback

8

on August 6, 1996, the day of the alleged second injury, but only told Dr. Stanback about the May 7, 1996, injury.

¶17.    Miller's credibility is further undermined because of testimony regarding her employment search. Answering interrogatories, she did not identify any employer with whom she applied for a job. Yet she testified at the hearing she had searched for employment at numerous places. Cox, Raytheon's vocational rehabilitation expert, identified 17 possible job openings for which Miller would be qualified and could work even with medical restrictions given to her (by only one doctor, Dr. Stanback). Amazingly, Miller testified that on the day after receiving Cox's report in September, 1998, she went to all 17 places to inquire or apply for a job. It is also more than incredible that Miller maintains that she is permanently disabled because of a backstrain, even though she was able to visit 17 potential employers in two different towns in one day.

¶18.    Miller's credibility is also questionable concerning the end of her friendship with Ruthie Williams. At a hearing on the merits, Miller testified the friendship ended because Miller's husband refused to buy Williams's cigarettes at the Air Base Commissary. All three of Miller's children corroborated this testimony. Williams testified that it ended because Miller accused Williams of spying on her for Raytheon. Williams was never confronted with the cigarette story. Instead Miller's counsel explicitly accused Williams of spying.

¶19.    Raytheon presented many witnesses to counter Miller's allegations of the second injury. Eva McMinn met Miller during the work shifts of August 5, 1996, and August 6, 1996, the date of the alleged injury, and testified that she saw Miller performing normal duties between 5:00 a.m. and 6:00 a.m. McMinn was a fellow custodian who was picking up trash bags from buildings which were being cleaned

9

by Miller.  However, Miller testified that she hurt her back pulling a buffer  around 2:30 a.m.  She also stated that she went to an office to lie down until after 6:00 a.m.

¶20.    Ruthie Williams also testified that Miller was a disgruntled worker unhappy with the way she was being treated by Raytheon.  Miller told Williams several times she was going to do something to get off the night shift.  She also made numerous statements to Williams that she was not going to work but was going to get paid and that she was not coming back to work to put up with the "BS."  Williams also saw Miller on several occasions when Miller was not limping or showing any signs of injury.

¶21.    Strangely enough, in her order, the administrative judge noted that she did not find Williams to be credible as a witness.  However, Williams testified by her deposition.  Thus, the administrative judge did not have an opportunity to observe Williams's demeanor during her testimony and was in no better position to determine Williams's credibility than the Commission.

¶22.    Three of Miller's former coworkers testified that she reported only one on the job accident. Gerhardt, her supervisor, did not have a conversation with Miller and saw no report concerning Miller on August 6, 1996.

¶23.    Riley Jones, M.D., an orthopedic specialist, testified that at the time of his evaluation, Miller suffered from no injury and had no impairment rating or restriction.  Dr. Carro, a physical medicine and rehabilitation specialist, testified he returned Miller to work on July 31, 1996, with no impairment rating and no restrictions, and that her back condition in May, 1997, was unchanged from her condition of July 31, 1996.  Scott Jones, M.D., of the Columbus Orthopaedic Clinic released Miller to go back to work twice before she stopped seeing him.  Dr. Glassaway, an orthopedic surgeon, indicated in his records that Miller suffered from a strained back and knee and further that she exerted a submaximal effort on testing.  Only

10

Dr. Stanback testified that Miller was permanently and totally disabled based on his diagnosis of a back strain.

¶24. Miller alleges that notice of the injury of August 6, 1996, was provided to the employer in the form of off-work slips which were faxed by her lawyer to Raytheon. The only off-work slips introduced into evidence made no reference to any work-related injury. Instead, the two slips, dated August 6, 1997 (sic) and August 14, 1996, contain absolutely no reference to a work-related injury. They state that Miller was under a doctor's care for an unspecified medical problem. Also included in the record is a September 9, 1996, letter from Dr. Stanback addressed "To Whom it May Concern"and a similar March 13, 1997, letter. The September letter makes no reference to any work-related injury. The March letter refers to the May injury but no other work-related injuries, including the alleged August injury. These slips and letters clearly constitute Miller's proof that a work-related injury occurred on August 6, 1996. Yet neither mentions such an injury. The Commission ruling that Miller did not sustain a work-related injury on or about August 6, 1996, is clearly supported by substantial evidence including the testimony of Miller's coworkers, McMahon and Williams. The Court of Appeals exceeded its limited scope of review in upholding the ruling of the circuit court which overturned the decision of the Commission.

¶25. We find that the Commission's findings were neither arbitrary nor capricious and that they were supported by substantial evidence. While the administrative judge credited certain testimony, the Commission rejected the testimony because it was subjective and not corroborated by any objective evidence. The only persons testifying as to Miller's alleged second injury were Miller and her family and her treating physician, Dr. Stanback. No Raytheon supervisors or employees witnessed the alleged second accident or saw Miller behaving in a way which would indicate that she had been injured. Even though Dr.

11

Stanback opined that Miller was totally disabled from the alleged second injury, there are absolutely no objective medical findings in his records. Dr. Stanback never recommended that Miller see a specialist or consult with a surgeon, yet he stated that Miller could not perform work activities. On the other hand, Dr. Carro performed medical tests, including an MRI, which were completely negative for any objective findings. His recommendation was for Miller to go to physical therapy and then return to work. Several months after the alleged second injury, Dr. Carro found no neurological deficits. He stated that there were no changes in Miller's left knee or back from his examination of her in July of 1996, at which time he told Miller to go back to work. These findings do not support a finding of total disability.

¶26. The circuit court and the Court of Appeals, therefore, erred when they substituted their judgment for the Commission's findings.

## CONCLUSION

¶27. For these reasons, we reverse the judgments of the Court of Appeals and the circuit court and reinstate the decision of the Mississippi Workers' Compensation Commission.

¶28. **REVERSED AND RENDERED.**

**PITTMAN, C.J., SMITH, P.J., COBB AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN JOINED BY EASLEY AND GRAVES, JJ. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶29. The majority erroneously finds that the Court of Appeals substituted its opinion for that of the Commission. Applying the applicable standard of review, the Court of Appeals correctly found that the Commission's findings were against the overwhelming weight of the evidence and therefore affirmed the

12

circuit court's order, denying reinstatement of the Commission's findings.  The Court of Appeals' holding should be affirmed as the applicable law and evidence presented support its findings.  For this reason, I dissent.

¶30.    The Court of Appeals correctly stated the applicable standard of review:

> Appellate review of compensation cases has been clearly stated. The Mississippi Supreme Court has stated "[t]hat the findings and order of the Workers' Compensation Commission are binding on the court so long as they are 'supported by substantial evidence.' " ***Liberty Mutual Ins. Co. v. Holliman***, 765 So.2d 564, (¶ 6) (Miss. Ct. App. 2000) (quoting ***Vance v. Twin River Homes, Inc.***, 641 So.2d 1176, 1180 (Miss. 1994)).  The Commission's order will be reversed only if the court finds that the order was clearly erroneous and contrary to the overwhelming weight of the evidence. ***Liberty Mutual Ins. Co.***, 765 So.2d at (¶ 6).  "A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." ***J.R. Logging v. Holford***, 765 So.2d 580, (¶ 12) (Miss. Ct. App. 2000).  "Where no evidence or only a scintilla of evidence supports a Workers' Compensation Commission decision, this Court does not hesitate to reverse." ***Metal Trims Industries, Inc. v. Stovall***, 562 So.2d 1293 (Miss. 1990) (citing ***Universal Mfg. Co. v. Barlow***, 260 So.2d 827 (Miss. 1972)).

***Raytheon Aerospace Support Servs.***, 850 So.2d 1159, 1172-73 (¶ 56) (Miss. Ct. App. 2002). ¶31.

The majority finds  that the Court of Appeals was "bound by the Commission's factual findings and the Commission's determinations" as to which witnesses were credible and which witnesses were not credible.  The majority fails to see the full picture regarding the applicable standard of review.

¶32.    In order to apply the "substantial evidence" standard of review, it is implicit a court review the record and evidence presented to the Commission.  Only such a review would permit a court to make a

13

determination whether the Commission's "order was clearly erroneous and contrary to the overwhelming weight of the evidence." *Liberty Mutual Ins. Co. v. Holliman*, 765 So.2d 564, 568 (¶ 4) (Miss. Ct. App. 2000). Without looking at the record and reviewing the evidence, the court would not really be reviewing the Commission's findings. The majority's holding in effect all but eliminates our authority to review the record, evidence, and Commission's findings. The majority would hold this Court unequivocally "bound" by the Commission's decision regarding evidence. If this is the case, then what really is the purpose of reviewing the Commission's findings? Such a holding in effect negates the need for judicial review of the Commission's findings.

¶33. In analyzing the Commission's findings regarding Miller, the Court of Appeals reviewed the record, looked at all the evidence and testimony and determined that the Commission's ruling was indeed "not supported by substantial evidence" and "contrary to the overwhelming weight of the evidence." *Raytheon*, 850 So.2d at ¶¶ 56, 68-74) (citing *Liberty Mutual Ins.*, 765 So.2d at (¶ 6) (quoting *Vance v. Twin River Homes, Inc.*, 641 So.2d 1176 1180 (Miss. 1994))). Although the Court of Appeals applied the applicable standard of review, it cannot be said, however, that such a broad and in-depth process of fact finding and weighing of evidence is subscribed by the "substantial evidence" standard of review. However, to a degree a certain amount of fact finding and weighing of evidence is necessary to determine whether substantial evidence was presented to support the Commission's findings and to determine whether the Commission's findings are against the overwhelming weight of the evidence. With that being said, the Court of Appeals applied the correct standard of review and did not overstep its authority in reviewing the Commission's findings.

¶34. The majority finds that Court of Appeals overstepped its boundaries of review, its ruling should be overturned, and the Commission's findings should be reinstated. Such a holding ignores the true weight of the evidence.

¶35. Although the Court of Appeals may have gone too far in its fact finding and rendition of the evidence, it cannot be said that after reviewing the facts, the Court of Appeals decision to affirm the circuit court order was error. As found by the Court of Appeals, there was only minimal evidence that Miller was not totally disabled. *Raytheon*, 850 So.2d at 1175 (¶ 69). In fact, the evidence and medical testimony relied upon in the Commission's factual determinations was that of a physician who had only seen Miller once, despite the testimony, records, and affidavits of four other physicians who had treated Miller on a regular basis for her injuries. *Id.*

¶36. The overwhelming weight of the evidence established that Miller is in fact totally disabled. There was minimal and only scant evidence to support the Commission's findings.

¶37. After reviewing the evidence, the Court of Appeals correctly found that there is a lack of substantial evidence to support the Commission's findings and that the Commission's findings are against the overwhelming weight of the evidence. Thus, the Court of Appeals properly affirmed the circuit court's order. Accordingly, I would affirm the judgment of the Court of Appeals. For the above-stated reasons, I dissent.

**EASLEY AND GRAVES, JJ., JOIN THIS OPINION**.