ON WRIT OF CERTIORARI

WALLER, Chief Justice,
for the Court:
¶ 1. Kathy Allegrezza filed separate workers’ compensation claims against her employer Greenville Manufacturing alleging an injury to her upper extremities (carpal tunnel syndrome) in 1997 and a separate injury to her back in 1998. An administrative law judge (ALJ) granted disability benefits for Allegrezza’s carpal-tunnel-syndrome claim but found that Alle-grezza had not proven a loss of wage-earning capacity to support her back-injury claim. The administrative judge also denied Allegrezza’s claim to amend her petition to controvert to include a psychological-overlay claim, finding that Allegrez-za had been treated by physicians outside the proper chain of referral. The Mississippi Workers’ Compensation Commission affirmed the administrative judge’s findings regarding Allegrezza’s carpal-tunnel-syndrome claim and the denial of the motion to amend. However, the Commission found that Allegrezza had sustained some loss of wage-earning capacity due to her back injury and awarded her disability benefits for that injury. Allegrezza appealed to the Circuit Court of Washington County, which affirmed the Commission’s decision in all respects. She then appealed to this Court, and the case was assigned to the Court of Appeals. The Court of Appeals affirmed the Commission’s decision, finding that substantial evidence supported each of the Commission’s findings. This matter is now before this Court on Allegrezza’s petition for writ of certiorari.

FACTS

¶ 2. Allegrezza began working for Greenville Manufacturing in 1993, working in both the sewing department and the quality control department. In 1997, she received a transfer to the “cutter department.” After her transfer, Allegrezza began to experience pain and swelling in her hands and wrists and sought treatment from her primary physician Dr. Joe Pul- *721 liam. Greenville and Travelers also referred her to Dr. Jim Adams for an evaluation. Dr. Adams then referred Allegrezza to Dr. Don Carpenter and Dr. Aubrey Lucas, a hand specialist. Tests performed by Dr. Carpenter revealed that Allegrezza suffered from bilateral carpal tunnel syndrome. Dr. Lucas confirmed the diagnosis and recommended that Allegrezza undergo surgery. Allegrezza sought evaluations from Dr. Larry Field and Dr. Shelby Brantley, who both confirmed the diagnosis of bilateral carpal tunnel syndrome and recommended surgery... Dr. Lucas performed bilateral carpal-tunnel releases on Allegrezza on January 8, 1998, and Alle-grezza returned to work on modified duty on January 12,1998.
¶ 3. On January 21, 1998, while still on modified duty, Allegrezza was walking through Greenville’s plant when she tripped over a wooden pallet and fell on her left side. She returned to Dr. Lucas the following day for him to examine her wrists after the fall. Dr. Lucas indicated that Allegrezza’s fall did not change or worsen the condition of her wrists. Dr. Lucas placed Allegrezza at maximum medical improvement (MMI) on April 2, 1998, and assigned a five-percent impairment rating to each upper extremity.' Dr. Lucas released Allegrezza to return to her regular work duties on April 3, 1998. Dr. Lucas’s final restrictions stated that Alle-grezza could return to regular duty for two hours per day, but that any repetitive work should be restricted for the remaining six hours of the work day.
¶ 4. Following her fall, Allegrezza was evaluated by Dr. Jim Adams, and x-rays were performed. She then returned to Dr. Pulliam, her primary physician, for another examination. Dr. Pulliam- diagnosed Allegrezza with a back strain and referred her to Dr. Rodney Frothingham, a neurosurgeon. Dr. Frothingham performed an MRI on Allegrezza. Based on his examination and the MRI results, Dr. Frothingham indicated that Allegrezza was not a candidate for surgery. Dr. Froth-ingham then referred Allegrezza to Dr. Jo Travis, an anesthesiologist. Dr. Travis treated Allegrezza for a short time but could not provide her any relief from her back pain. Dr. Travis then referred Alle-grezza to Dr. David Collip, a physician specializing in physical medicine and rehabilitation. Dr. Collip evaluated Allegrezza and referred her to several other specialists for various tests and treatments, including a lumbar myelogram/CT scan. The myelogram revealed no abnormalities and essentially read as normal. Based on these results, Dr. Collip indicated that Al-legrezza’s complaints were mostly subjective and were not substantiated by her medical records.
¶ 5. Greenville Manufacturing also had Allegrezza evaluated after her back injury. On August 11, 1998, Dr. John Brophy performed a physical examination of Allegrez-za and agreed with Dr. Frothingham’s recommendations for treatment. Dr. Brophy indicated that it was his opinion that the source of Allegrezza’s back pain was sa-croiliitis with possible mild lumbar radicu-lopathy. Dr. Brophy later testified in his deposition that, based on the results of Allegrezza’s myelogram/CT scan, Allegrez-za was not a candidate for surgery.
¶ 6. After reviewing the results of Alle-grezza’s myelogram/CT scan, Dr. Collip referred Allegrezza to Christopher Men-hard, a physical therapist. Menhard performed a functional capacity evaluation (FCE) of Allegrezza on November 3, 1998, and later performed an on-site job analysis. Based on these evaluations, Menhard indicated that it was his opinion that Alle-grezza could return to work and perform a light-to-light-medium duty job. He stated that Allegrezza could perform her job as a *722 cutter because it was a medium-to-light-medium duty job and because there was no forceful repetition in her movements. Dr. Collip examined Allegrezza again on November 19, 1998, and placed Allegrezza at MMI on that date, assigning a ten percent permanent partial impairment rating to her body as a whole. He anticipated that no further treatment or work-up should be considered appropriate, and that she could return as needed.
¶ 7. After Dr. Collip released her to return to work, Allegrezza returned to Dr. Pulliam, who then referred her to Dr. Michael Steuer, another anesthesiologist and pain specialist. Dr. Steuer placed Alle-grezza on pain medication and referred her to Dr. Adam Lewis, a neurosurgeon in Jackson. Dr. Lewis then sent Allegrezza to Dr. Greg Wood to evaluate her candidacy for lumbar fusion surgery. Dr. Wood examined Allegrezza on July 1, July 14, and July 21 of 1999. Dr. Wood performed a discogram on Allegrezza, as well.as another myelogram/CT scan. Based on the results of these tests, Dr. Wood indicated that Allegrezza was not a surgical candidate. Nevertheless, Dr. Lewis performed surgery on Allegrezza in September of 1999, releasing her to Dr. Steuer for postoperative treatment. Allegrezza testified that this surgery provided her with significant relief from her back pain. Dr. Steuer also referred Allegrezza to Dr. Margaret Cassada, a board-certified psychiatrist. Dr. Cassada opined that Allegrezza suffered from depression and problems with her psychosocial environment.
¶ 8. The record reflects that Allegrezza’s last day at work at Greenville Manufacturing was February 9, 2000. Allegrezza claimed that she was terminated because she could not perform her job duties. However, the record is not clear whether Allegrezza actually was terminated. On subsequent job applications, Allegrezza indicated that she had left Greenville Manufacturing because she had been placed on medical leave due to her injuries.

STATEMENT OF THE CASE

¶ 9. Allegrezza filed petitions to controvert with the Commission, claiming that she had sustained compensable injuries to her upper extremities and her back. She later moved to amend her petition to allege a claim of psychological overlay. Following a hearing, the ALJ found that Alle-grezza’s carpal-tunnel claim was compen-sable and awarded Allegrezza temporary total disability benefits for a period of six weeks, as well as permanent partial disability benefits for a period of fifty weeks. The ALJ also found that Allegrezza had suffered a compensable back injury, but that she had failed to demonstrate a loss of wage-earning capacity. Thus, the ALJ awarded Allegrezza no benefits for her back injury. Finally, the ALJ found that the treatments provided by Dr. Steuer, Dr. Cassada, and Dr. Lewis were “without the chain of referral, are not the financial responsibility of the employer or carrier, and are not reasonable and necessary to the process of claimant’s recovery.” Accordingly, the ALJ denied Allegrezza’s motion to amend her petition to include the psychological-overlay claim.
¶ 10. Allegrezza then appealed the ALJ’s decision to the Commission. The Commission affirmed the ALJ’s findings and decision on the issue of Allegrezza’s carpal-tunnel claims. The Commission also affirmed the ALJ’s findings and decision on the issue of Allegrezza’s psychological-overlay claim, concurring that the motion to amend should be denied. The Commission failed to make any additional factual findings regarding these claims. The Commission reversed the ALJ’s decision regarding Allegrezza’s back injury, finding that Allegrezza had suffered some *723 loss of wage-earning capacity. The Commission found that, although the evidence suggested that Allegrezza was capable of working despite her injury, the record was also clear that “[s]he was fired from Greenville Manufacturing because she could not perform the job[,]” she had performed an adequate job search, and that she had not found employment at the time of the hearing.
¶ 11. The Washington County Circuit Court and the Court of Appeals both affirmed the Commission’s decision in all respects, relying on the deferential “substantial evidence” standard of review for administrative-agency decisions. Allegrez-za now seeks certiorari review of the Commission’s decision. Allegrezza claims the Commission applied incorrect legal standards in determining the date of her MMI and the extent of her disability, and in denying her claim of psychological overlay. We granted certiorari and limit our review to Allegrezza’s claim that the ALJ and the Commission disregarded the testimony of Dr. Steuer, Dr. Lewis, and Dr. Cassada, physicians outside Allegrezza’s proper chain of referral. See Miss.R.App. P. 17(h).

STANDARD OF REVIEW

¶ 12. “Absent an error of law, where substantial credible evidence supports the Commission’s decision, this Court, as well as the circuit court, may not interfere.” Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992). This is so even if we, as the fact-finder, would have been convinced otherwise. Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988). “As to matters of law, our review is de novo, but the interpretation of the Commission of the Workers’ Compensation Law is to be accorded great weight and deference.” KLLM, Inc. v. Fowler, 589 So.2d 670, 674 (Miss.1991).

DISCUSSION

I. Whether the Commission failed to consider the testimony of physicians outside the chain of referral.
¶ 13. The ALJ correctly found that Allegrezza’s treatment by Drs. Steuer, Lewis, and Cassada fell outside the appropriate chain of referral under Section 71-3-15(1) of the Mississippi Code, and that treatment by those physicians was not the financial responsibility of Greenville Manufacturing and Travelers. Allegrezza does not challenge this particular ruling in her petition for certiorari. Rather, she claims that the ALJ erroneously refused to consider testimony from the unauthorized physicians that supports her assertion that she is totally disabled.
¶ 14. A determination of the claimant’s loss of wage-earning capacity should be made only after considering the evidence as a whole. McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991) (citing Piggly Wiggly v. Houston,, 464 So.2d 510, 512 (Miss.1985)). “This Court will not determine where the preponderance of the evidence lies when the evidence is conflicting, the assumption being that the Commission, as the trier of fact, has previously determined which evidence is credible, has weight, and which is not.” Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss.1990). This Court has further held that where medical evidence is conflicting, this Court will affirm the Commission “whether the award is for or against the claimant.” Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966). On the other hand, “if the medical proof of disability is undisputed and is not inherently improbable, incredible, unreasonable or untrustworthy, it may not be rejected and must be given effect.” Id. at 268-269 (citing Dunn, *724 Workers’ Compensation § 52 (1957)). See, e.g., Univ. of Miss. Med. Ctr. v. Smith, 909 So.2d 1209, 1222 (Miss.Ct.App.2005) (finding that the Commission erred in completely disregarding the uncontradicted testimony of the claimant regarding the disabling effects of headaches caused by work-related injury).
¶ 15. In denying Allegrezza’s motion to amend her petition to controvert, the ALJ noted that Allegrezza had been treated by “an excessive number [of physicians] under a strict interpretation of the Act, § 71-3-15(1).” The ALJ also found the testimony of Dr. Cassada to be “suspect” due to her connection to Drs. Steuer and Lewis, whose treatment Greenville Manufacturing and Travelers strenuously challenged. Later in the opinion, when discussing Alle-grezza’s back injury, the ALJ stated, “Since the issues of Dr. Steuer’s treatment and all following treatment for the back and alleged psychological injuries have been previously addressed, no further medical .testimony regarding those issues will be considered.” Allegrezza interprets this statement to mean that the ALJ completely disregarded the testimony of Drs. Steuer, Lewis, and Cassada. Because the Commission affirmed the ALJ’s findings without making any additional factual findings regarding the medical evidence, Alle-grezza argues that the Commission failed to consider the evidence as a whole.
¶ 16. After reviewing the record, it does not appear that the ALJ actually ignored the testimony of the unauthorized physicians, as Allegrezza suggests. Clearly, the ALJ did not consider Drs. Steuer, Cassa-da, or Lewis to be credible witnesses in this case. Most glaringly, Allegrezza was not treated by these physicians until after she was released by Dr. Collip to return to work. In fact, Dr. Lewis performed surgery on Allegrezza after at least three other physicians — Dr. Frothingham, Dr. Brophy, and Dr. Wood, who was Dr. Lewis’s own referral — had recommended that Allegrezza was not a candidate for surgery. The ALJ found that the weight of the evidence suggested that Allegrezza could perform her job fully within the restrictions imposed upon her. In light of these facts, the ALJ found that Allegrezza had received reasonable and necessary medical care from her authorized physicians, and that her treatment by Drs. Steuer,. Lewis, and Cassada was not only unauthorized, but also unreasonable and unnecessary.
¶ 17. The record suggests that the ALJ at least considered the testimony of the unauthorized physicians before finding the opinions of the authorized physicians to be more credible. It was the Commission’s responsibility to examine any conflicting evidence and determine which evidence is credible. See Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1224-1225 (Miss.1997) (citing Stovall, 562 So.2d 1293 (Miss.1990)). The Commission affirmed the ALJ’s finding that the treatment by Drs. Steuer, Lewis, and Cassada was not reasonable or necessary for Alle-grezza’s recovery. This finding is supported by more than the mere scintilla of evidence or lack of evidence required for reversal. Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (Miss.2003). Because the Commission’s findings were supported by substantial evidence, we have no authority to interfere with its decision. Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss.1991).

CONCLUSION

¶ 18. The record does not support Alle-grezza’s assertion that the administrative law judge and the Commission disregarded the medical testimony of her unauthorized physicians. In addition, the Commission’s findings were supported by substantial evi *725 dence. Accordingly, we affirm the judgments of the Court of Appeals and the circuit court and the order of the Mississippi Workers’ Compensation Commission.
¶ 19. AFFIRMED.
DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.